The counsel is going to argue, step up please and speak into the microphone. Remember that the microphone has an amplifier on it for recording purposes. And then state your names and the party you are representing. My name is Christopher Karpaz and I represent the defendant, Mark Johnson. Good morning your honors, Assistant State's Attorney Alan Spalberg representing the people of the state of Illinois. Christopher, what's your last name? Karpaz. K-O-P-A-Z as in cat, Z as in zoo. Thank you. So, 15 minutes a piece, time for rebuttal? Yes. Okay, how much time do you want for rebuttal? About three minutes. Okay, all right, okay. Proceed. Good morning your honors, may it please the court. We raised a number of issues in the brief. Today I'd like to focus my arguments on the first two issues, that is about the married counts and the reasonable dower argument. But I welcome questions on any of the other arguments in the brief as well. As for argument one, Mark Johnson's rights to due process and a fair trial were violated when he was tried and convicted on six counts that had been nollied by the state and thus were not legally in effect at the time of his trial. All right, so the nolly occurred as a result of, we're not exactly sure, but it was an agreement between the state and the public defender at the time, correct? There was a 402 conference after which he was convicted. That's right, it's not clear. So it was a 402 conference because the record doesn't detail the admonishments regarding 402. Correct. Okay, so it was a 402 conference. That's correct. All right. So did an agreement take place within the 402 or did it fall apart in the 402 and then an agreement was reached? So what appears to have happened is that there was the 402 conference. Mr. Johnson pled guilty to count one. After the court accepted the plea, the state nollied those counts, and the court said that it would sentence Johnson to 42 months as promised during the 402 conference. Was there a call reported during the entire proceeding? Not during the 402 conference. After the 402 conference. Yes. Because the trial court didn't place into the record that this was pursuant to a 402 conference and that there was an agreement between the parties. The 402, that was the result of a 402 conference. I know, but what I'm saying is afterwards. Right, right. When he came back outside, and on the record, there's no reference to a 402 conference having really taken place. And what happened is a 402. Not immediately after. That's correct. Okay. But the record does make clear later that there was the 402 conference. And I think the judge at sentencing specifically says that he gave 42 months as promised. So that's what happened there. Once he pled guilty, and that guilty plea was vacated, the state went to trial on all seven counts. As for the six counts that have been nollied, the state did not reindict, did not move to vacate the nollie, did not move to reinstate, did not do anything whatsoever to bring back those nollie counts. Well, their argument is that once the case went to trial, right, that the plea was removed, they don't have to do anything. They can sit on their hands. That is their argument. Right. Their argument is contrary to both Supreme Court rules and Supreme Court precedent. If you look at Rule 605, that says that, you know, the defendant's admonished that any charges, that if he withdraws his plea, if the plea is vacated, that any charges that were dismissed can be reinstated, quote, upon request of the state. So the rule contemplates that the state has to take some sort of affirmative action. It says it can be. Is that what you said? Yes. Not must. Correct. I think it says right. Yes. So the charges, there's no, you know, mechanism for automatically reinstating these charges. The Supreme Court rule itself contemplates that the state has to request that those dismissed charges come back. You know, I found that whole plea agreement and putting us back, I found that really didn't answer, I really didn't find it too relevant, if you will. But I do find Hughes, the decision in Hughes to be particularly, is really how we need to examine this case, is the Supreme Court has, in Hughes, recognized the two ways to get the Nally class charges back on board, if you will. And the state did neither of those things. Correct. But the Supreme Court goes on to say that there's no jurisdictional issue, that a court can, doesn't lose jurisdiction, if you will, of those Nally class claims. And that case, they allowed a plea to go ahead on a Nally class claim that had not been reinstated. And they also found that our whole constitutional law, if you will, that a defendant can't be found guilty of charges that haven't been properly indicted or brought is really not applicable as well. What do we do in this case? What is the true issue following Hughes? How are we supposed to view this? We view it in the case following Hughes, Chanal. I think that's what's more analogous to the situation we have here. Well, Chanal was more, I don't find that really too applicable either. That was more, I don't find it applicable. Let me explain. What do we do with people versus Stafford now that Hughes has been decided? Stafford is analogous in this case in that you have the state going forward on charges that were Nally'd and the appellate court held that that was improper. So that's analogous. They found a due process violation. That's what we have here. And they found a due process violation because the defendant was surprised and prejudiced for not being able to prepare a defense. And those were attempt murder charges. There was like two or three of them. There were several. So how do we find surprise and prejudice here? Because what we have here is seven counts of forgery dealing with different alleged possession of different amounts of money. And the prejudice comes from the having to, you know, to being exposed to the accusations, to the arguments, to the evidence that comes out of those counts that were dismissed. Beth, but to Justice Rochford's point, in Stafford what happened was they didn't have an opportunity to prepare a defense. Right? Yeah. Okay. And in here, where is there in the record indicate that Mr. Johnson didn't have an opportunity to prepare a defense? Because in Stafford the court said that is what was erroneous here, that he didn't have an opportunity to prepare a defense in Stafford. I mean, that goes to explain sort of the root problem, but factually they're analogous. I mean, in Stafford the facts were one single shooting incident, a murder with several attempt murders arising out of a single shooting incident. So, you know, that's pretty similar to what we have here, one single traffic stop with forgery counts that arise out of a single traffic stop. So this surprise and unfairness that motivated the court's decision in Stafford is also present here. Okay. So he went to trial and from the very beginning wasn't the jury informed about what the charges were and there were jury verdicts for each count. And I think that Your Honor's concern is just pointing out the fact that this is, you know, an error that was forfeited. And so, you know, because trial counts did not object at the time. Right. And so to the extent that that's relevant, we're in plan error territory. We're in plan error. And so, you know, step one, as we all know, is to determine whether error occurred. And it's, you know, the error here is clear. The state proceeded on charges that were nollied without reinstating, without re-indicting, as we know they're required to under Hughes and Chenal. And it's at that point we look at whether the evidence is closely balanced or whether this was an error that was so serious that undermines the integrity of the case. How do we get around the prejudice issue? I mean, where's the prejudice here? Mr. Johnson had an opportunity to present defense. In the very beginning, he knew these charges were coming at him. The prejudice comes from having to defend against one count that dealt with seven bills, seven $20 bills. Those were the bills that actually went up. Right. Versus a much larger amount, $1,100, if you add up the rest of the counts. But isn't the issue here whether or not they were counterfeit bills or not? Not necessarily the amount, but whether or not they were counterfeit bills and whether the other bills that he had in his possession were legal tender. Correct. But there's a big difference between arguing that issue in the context of $140 versus, you know, nearly 10 times as much, $1,100. $1,100 is $1,300 in this case, right? I'm sorry? Wasn't it only $1,300 in bills? $1,100. $1,100. Okay. So $1,100. Just even less. Right. So there's a big difference between those. And the states argued at trial and here on appeal that the large amount of counterfeit money is something that suggests his intent to defraud, his intent to, you know, pass that money off as real. Do you think that evidence would have come in? I mean, we have a jury who, you know, discounted the counts that dealt with the money that was in the home as opposed to on his person. And we had a judge who entered sentences on only the count one that was actually validly before the jury. Wouldn't some of that other evidence have come in anyway? It may have. We don't know. But the point is that, you know, arguing a single count of forgery with respect to $720 bills is extremely different, a much, you know, different kind of case for the defense to argue than having to do seven individual counts of, you know, specific amounts of money. And that included two counts that had to do with the counterfeit money that was found in the house. So it was not found on his person. It had to do with sort of a completely different set of facts. And the defense had to argue against those as well. So the type of surprise and unfairness in Stafford is also present in this case. Well, maybe the unfairness, but not the, I don't know, I don't see the surprise, but I think you arguably have an unfairness argument. And for me, all right, so you have this counterfeit money, all right, and the issue is did he intentionally distribute this counterfeit money? So that's the question here. It's not necessarily the amount. It's did he intend to distribute this counterfeit money? Did he pass it along? That was really at issue in this case. Right, but it was a fact that the state used to argue that he had that intent. The amount of money, the large amount of money, the state saying, you know, why would you have this giant stack of cash if you're not going to be outspending it? But isn't the question that if it's counterfeit, it's counterfeit, it doesn't matter if it's $1, if it's $1,000? I mean, it's counterfeit. I mean, it's counterfeit, but I'm disputing that. What is the dispute, and I think you've pointed this out, is that Johnson did not have the intent, the specific intent to issue the money or the specific intent to defraud with respect to that money. And so the amount of money, I mean, that's what the states argued, is one of those factors that come into play here. And that, you know, ties in. I'm just a little bit off the track of what we're discussing right now. So what was the evidence presented during the trial with regards to the issue of intent? Our argument, and this leads us into the second question. The question is what was the evidence that was presented? Is that it was essentially mere possession of the counterfeit money with almost nothing else showing an intent to spend the money or defraud anyone with the money. He was in a car. Was there any evidence that it was distributed at the Walgreens? No. Or his neighborhood? No. None at all. No evidence that he had distributed any counterfeit money whatsoever. He had a Walgreens receipt on him that showed he made a cash purchase earlier that morning. That's indicative of nothing. We all make drugstore purchases all the time. He had no, you know, made no statements indicating any intent to spend the money. He wasn't even in a store or restaurant, a shop, near another person, near a street vendor, near anyone where you might be, you know, in a position to spend that money or pass it off as real. And so we're left with essentially the mere possession of counterfeit money, which is not a crime. Which is outside of what the statute requires, right? Correct. The statute requires the specific intent on both, you know, specific intent to issue and to defraud with these documents. Okay. Sorry to interrupt you. Go ahead. Proceed. Okay. And I guess that leads me into the second argument that, you know, the state didn't present any evidence as to the intent to defraud or issue this money. And, you know, the state's argument would essentially criminalize the mere possession of counterfeit money. It would be an extraordinary decision for someone to, you know, for the state to be relieved of those elements where there are two specific intent mental states in the statute. And it would expose a lot of people to criminal jeopardy if they could be punished with forgery just for possessing counterfeit money without anything else. The state points out a number of factors, all part of, you know, the same speculation that he might have been using it, the fact that he had the money in two different pockets, the real and one, the counterfeit and the other. It's not really indicative of anything except maybe he was being careful with not wanting to spend this counterfeit money. And even if this court finds that there was sufficient evidence as to forgery, you know, the state had proven beyond a reasonable doubt the intent to defraud or deliver, we argue that the evidence was at least closely balanced for purposes of argument one and also our 431B Zerr question argument in the brief. Though the state has confessed error about the judge's questioning of the jurors, we can only question whether the evidence was closely balanced. And so if this court finds closely balanced evidence on that, then this court should reverse under the 431B argument as well. I have a question regarding Hughes. You're relying on Hughes in terms of the issue about the Nalee price charges, right? Yes. What about the other issue that was raised by our Supreme Court with regards to the jurisdictional authority? So the jurisdiction issue in Hughes came up because he was convicted on that Nalee count. He pled guilty to that Nalee count. The matter of jurisdiction and voidness was really the only way to challenge the plea there. That's not something we have here. We have something much more like Chenal where the guilty plea was vacated and the state wants to go forward on charges that it had Nalee. And in Chenal, the court said there are these two mechanisms to do it, and the state in Chenal had reinstated the counts or attempted to reinstate the counts. They weren't allowed to do so ultimately because of the statute of limitations issue. So I don't know how Chenal is very specific, I think, to whether you can reinstate when the statute of limitations says so. Ultimately, the court said you couldn't reinstate in that case because there was a statute of limitations problem. But the court expressly said that the state did the proper thing by moving to reinstate. It was only then that the statute of limitations became a problem. So our argument is based on, I guess, that early part of Chenal that describes the mechanisms for bringing back Nalee counts. Counts that are Nalee are terminated, they're dismissed, they're gone going forward. So the state has to do something affirmative to bring those back. Chenal expressly makes that clear in paragraph 9 of its decision. And that says the state did the proper thing. Here, the state did not do that proper thing. So we're not making an argument that the state was barred by statute of limitations. Well, we don't have a statute issue here, right? Right. So the state could have gone forward. It's a due process unfairness. Yes. Stafford. And the court in Chenal cited Stafford and so left open, or Hughes, I think Hughes cited Stafford and so left open a claim such as this one that could be raised on direct appeal, a due process claim for going forward on charges that had been Naleed. Those charges do not reinstate automatically, as the state has argued here. The state has to do something to bring them back. Counsel, did you address the, or would you address the closely balanced issue? Sure. The closely balanced evidence is in connection with our reasonable doubt argument, that the evidence as to intent to defraud or intent to issue this money was closely balanced, if not insufficient. All the evidence showed was that Johnson possessed this counterfeit money. There were no statements that he intended to use this money, that he intended to pass it off. He wasn't stopped while attempting to pass it off. He was driving in his car and stopped pursuant to a traffic stop. No indication whatsoever as to what he was going to do with this money. I'm sorry. No, please. Do we need to reach the, go to the closely balanced on this Naleed Press issue? If this Court finds the error, then it would need to find either plain error or ineffective assistance of counsel, both of which we've argued in the briefs. But if we find that it's a structural error. Right. Then this Court, under the second prong of plain error, like a structural error, then the Court would not have to address the closely balanced evidence. Yeah. But in some ways it comes in in a due process analysis, right? I mean, what happened? We have to look at what the evidence that came in. Our position is that simply based on the rule, it doesn't really depend on the evidence because we have this clear statement from Chenal, from Hughes. We have Rule 605 that makes clear what the State is required to do. And the State did not do that with respect to these Naleed counts. So the evidence doesn't really come into play. It comes into play in Stafford, the prejudice to your defendant. Right. But there's no sort of separate prejudice analysis that the Court did in Stafford and no separate prejudice analysis that's required here. Well, it talks about unfairness, doesn't it? Right. I mean, it does talk about unfairness and the surprise in the context of why this claim is a due process violation. The Court doesn't say that you have to show specific prejudice with respect to those claims. Reading Stafford, it's not clear to me how it's any different, how defense counsel might have prepared differently when it was one single shooting incident firing at a group of people, how he would have defended differently had he known about those attempt murder charges. It's kind of similar to what we have here, where it's a single traffic stop. He's found in possession with a number of bills, and the State charged them out separately. But wasn't there argument that just the sheer amount of the money, the counterfeit money that he had, was intent in and of itself? But wasn't that their argument? That was part of their argument, yes. But the sheer amount was indicative of his specific intent to defraud and to issue this money. So that unfairness comes from the nature of the error. It was also the inability to keep evidence out relating to the attempted murders, the way they were unprepared. But it's not clear. The court didn't say in Stafford that defense counsel would have been able to keep out all evidence of the attempt murders. And it might have come in any way. The court didn't make that clear in Stafford, just like we don't know here if the court might have done things differently. Specifically, Counts 6 and 7, the charges pertaining to the counterfeit money in the home, those would not have come in, certainly, if the State under our argument, because those charges were dismissed. So that evidence would not have come in at all. So just for the record, so what is it that you're seeking from this court? Our main argument would be that this court should reverse outright on reasonable doubt grounds. And then we argue with respect to Argument 1, the nollie argument, that this court should send this case back for new trial on Count 1 only. If the State really wants to try to do a motion to reinstate, I don't see how this wouldn't be any sort of vindictiveness. It's kind of what happened in Stafford. The court said it should go back only on the single count. But if we send it back, does it suggest that it opens up the door again for all the charges? Because all they have to do, and there doesn't appear to be any limitation on that, for them to reinstate all the charges. There's no statute of limitations problem, for sure. There is a problem with vindictiveness on a successful appeal. So Stafford addressed that, and that's why Stafford specifically remanded only for charges on the murder count. We'd be asking for similar relief here. Well, Stafford was a little, it had already been up and down when it went to trial. I'm not sure how that's relevant. I don't really want to get into whether it would be vindictive, but we do have to remember it. It was a plea deal, and then it got vacated. And that's what we have here, a plea that got vacated. I mean, it's nearly identical in that sense. Procedurally, it's, with the exception of the fact that it was on appeal. Well, I guess vindictiveness is our issue right now. Right. So that would be the relief that we'd ask on that count, and then remand for new trial on the remaining arguments in our brief. Okay. If there's no other questions, I'll wait for rebuttal. Thank you. All right. Thank you. Good morning again, Your Honors. Morning. Let me begin by first clarifying that we probably should have and certainly could have moved to formally reinstate the charges after the defendant's guilty plea was withdrawn. In fact, under Rule 605, in direct response to your earlier question, Justice Hall, had we moved, the charges would have been reinstated. It is required. Rule 605 specifically says that upon the request of the State, any charges that may have been dismissed as part of a plea agreement will be reinstated and will also be set for trial. But there was no formal reinstatement request, sir. Yes, Your Honor, and that's exactly what I was about to say. There was no formal reinstatement, and that was certainly an oversight on our part. There's no question about that. But what I believe happened in this case, and we can tell from the way the transcript reads from across the board, that there was an understanding that these charges would be reinstated, that it was understood not just by the State's attorneys, but also by the defense's attorneys. How specific is that in the record? Your Honor, I believe it's most importantly found at the beginning of the jury trial when all seven charges are read to the prospective jurors. Each charge, based upon the different denominations, based upon the different serial numbers of the counterfeit funds, are read to the jury. There is no objection. Right. And that's what distinguishes this case so significantly from Stafford, because in Stafford, as soon as it was indicated that the previously nallied charges were going to be reinstated at the very beginning of trial, the defense attorney jumped up and down and said, this is unfair, you can't do this under Stafford. So maybe your defense counsel was so shocked that wasn't able to formulate an objection. Yes, I suppose that could be a way of reading, but I don't believe that's an appropriate way of reading the record, because as the record shows, this was a very well-prepared, very understood defense attorney. Everyone knew, particularly based upon the light of the way Rule 605 works, after a negotiated guilty plea, that the parties are supposed to be reverted. After a negotiated guilty plea is withdrawn, the parties revert to the status quo ante. The status quo ante in this case was the seven pending charges against the defendant. Those charges were then brought to trial as required by the rule. And at that point, the defense attorney was not surprised, did not express any concern, any difficulty in presenting his defense as happened in Stafford, which was the key to Stafford because the defense there was able to clarify precisely what the surprise and what the prejudice was. None of that happened here, and that's why in regards to your initial question, Justice Raffert, this case is defined by plain error. It's not defined by, say, other areas of analysis. It's the plain error analysis that has to be engaged in. And in that regard, the defendant has to prove both an error, which I'll concede at this point, that we should have formally moved to reinstate. But then he has to establish prejudice. But you're also asking us to make an assumption based on the record. Do you have any authority on that? An assumption based on the record? You're saying that because they mentioned it to the jury and defense counsel doesn't object, therefore there must have been some understanding beforehand that the charges were going to be reinstated. So that is basically asking us to assume that that's what's in the record, even though it's not directly stated in the record. Well, yeah, I think that's exactly the type of analysis that this Court engages in whenever there's a failure to object to a particular claim. And then this Court has to engage through a plain error analysis, through a forfeited claim. You're saying now it's error. We have error. I am acknowledging that we should have formally moved to reinstate. Certainly under Hughes, without a doubt, we should have. What I believe happened, and what I believe occurred, is that everyone assumed that charges were back because of the very extensive case law regarding what happens when you withdraw a negotiated guilty plea. Because the only reason why these charges were dismissed in the first place was because the defendant pled guilty to count one. It was a negotiated plea. It came out of a 402 conference before the judge. And I recognize that the 402 conference was not as clear on the records as it should have been. I would just point the Court to the timing of this, that this is back in early 2014 when this 402 conference happened. We amended Rule 402 to require much more specificity around that same time. And my guess is that Judge Lynn just was not as diligent in dotting all the i's and crossing all the t's. It was 2014 at the time, right? He hadn't switched to 2014 yet. Well, in 2014, we did amend Rule 402 around that time frame. But there's no question that the defendant did enter a guilty plea and then moved to withdraw and Judge Lynn granted him that right to withdraw without really any hesitation at all and moved the case forward towards trial, which is what's supposed to happen when a defendant who has pled guilty files a timely motion to withdraw a guilty plea. And that's what's so different about this case from the other cases the defendant relies on. Stafford was not a guilty plea. Stafford was a trial where we now leave the charges, the attempt murder charges, before the first trial. He is convicted. He goes up on appeal. It is remanded for a new trial. And then the State decides to reinstate those charges at the second trial, at the eve of the second trial. There was no opportunity for the defendant to expect that he was ever going to face those attempt murder charges. How do we know that this isn't similar to Stafford? How do we know that the defense counsel had an opportunity to prepare for the new charges that were being presented in court? Well, I think the essence of the objection is the single biggest factor because normally a defendant who's claiming surprise would allege surprise. He would say, I am surprised about this. How? I don't know. But there was nothing like that at all. They're not alleging surprise still. Absolutely right, Your Honor. They're not. There was no surprise. And if you look at Rule 605 and you look at the case law regarding negotiated guilty pleas, you can understand why an experienced defense attorney would not be surprised at the reinstatement. But you can also understand why in Stafford, where a case has already gone to trial and appeal only on a murder count, when all of a sudden you're now facing, on the eve of trial, additional charges that had been dismissed years before. That's quite surprising. And that explains why, in that case, that defense attorney said he wasn't prepared to defend against those additional charges. So is Hughes applicable here or not? Yes, Your Honor, and I was just about to explain. Hughes is both applicable and distinct at the same time. Hughes is applicable because it tells us that the going forward on a previously nallied charge does not create reversible error. By saying that it didn't deprive the court of jurisdiction over the ability to accept that plea for the charge that had been nallied six years earlier by, again, by the state, not pursuant to any negotiated plea but as just part of the pretrial process, in that case, the state had ten charges and one day long before they go to trial, they decide they're going to dismiss four of those charges. Then they decide they're going to go forward on a civil commitment. Then they change their mind and the civil commitment falls apart. And then they ultimately take a plea on the only count that they hit, one of the only counts that they had dismissed. And then the defendant comes along and says, wait a minute. I didn't realize the consequences of this plea because I had all these fatal consequences. I could be subject to a sexually violent person petition, and that's not fair. I want to withdraw the plea, but the plea was never proper in the first place because that count had been dismissed years earlier, and it was never reinstated. And what the Supreme Court said is, yes, the state should have reinstated it, could have reinstated it. They had two ways of doing so, either by a motion to reinstate or by a reindictment. But the fact that they didn't, didn't give the defendant any relief. It didn't deprive the appellate court, or excuse me, the circuit court of jurisdiction to accept that plea. And so Hughes establishes that, yes, you should reinstate, uniformly reinstate a previously gnarly charge, but the failure to do so is not by itself reversible error, doesn't by itself amount to prejudicial error. Even in a case like Hughes, where the defendant thought he was going to be able to walk out of prison simply because of the time he had spent in the pretrial posture by the time he pled guilty, and then learned that no, because of his guilty plea, he was going to be facing the indefinite civil commitment of a sexually violent person. So you're reading that it's voidable, but not void, as not being reversible error. It's not being automatic reversible error. And this, again, brings us back to plain error. Because under plain error, the defendant has to establish not just that an error occurred, but also that he was prejudiced. And where he can't allege any surprise or any real difficulty in the availability of his defense. And his defense was, whether it was to the $720 bills that were alleged in count one, or the other bills that were alleged in the other counts, his defense was the same. That I didn't have the intent. I don't know where these came. Maybe these came from somebody else. I don't know. There was nothing particular about the evidence. Where was the intent here? Where was the intent here? Well, as we say in our brief, this was a circumstantial case. There's no question that the intent to defraud and the intent to deliver was circumstantial. But in the light most favorable to the prosecution, which this Court has to review it. Counsel, is mere possession of counterfeit money a crime? Mere possession of counterfeit money is not an offense under the forgery statute, without a question. That's not a forgery if he merely possessed it. We had the proof, and I believe that we did, that he not only had the intent to defraud, but that he had the intent to deliver in some way. What was the intent to deliver? Well, as I said, it's circumstantial and can be inferred from this case. In particular, from the total amount of the denominations of the bills, over $1,100. But even if we're just looking at count one, seven $20 bills all with the same serial number in them. This is not an example of somebody having. So he only had $100 of counterfeit money? No, that's not what I'm saying. What I'm trying to say is if he maybe had one bill, if he had a single counterfeit bill, then maybe it would be an instance of somebody just having possession without the intent to deliver. But when you have multiple bills. Are there cases on that point? Not specifically. No, Your Honor, I don't. But again, the evidence has to be viewed in the light most able of the prosecution. It is akin to situations that we deal with quite often when we're talking about the possession of a controlled substance with intent to deliver in terms of oftentimes somebody who may have one package or one instance, one pill, wouldn't be found to have the intent to deliver. But if they have seven, if they have 12. So this started off based on a stop, right? Yes. Okay. And there was no evidence established that he distributed anything at the Walgreens, correct? Correct. Or in his neighborhood, or in the neighborhood where he was at by the Walgreens. Correct, Your Honor. All right. Okay. And he made the purchase at the Walgreens, right? He must have used legal timber because there was no counterfeit money. The record leaves that open. It's an inference that can be drawn, and I believe this Court should draw. What the evidence showed was that by the time the investigators went to the Walgreens, the money had been deposited into the safe at that point to be picked up later by an armored car. So they were unable to inspect it to see if there was any counterfeit money. It's possible, but it's my understanding, and this isn't part of the record, my understanding of the financial wizardry that goes on between taking money from a store to a bank to a place to the Federal Reserve makes it very difficult to maybe find one bill or two bills or something. But I don't know, but I do believe that that is an inference that can be drawn from the evidence. Okay. Going to that inference, the receipt that he had was for a Hewlett Packard printer. Yes. But at the location where supposedly he was screwing up and making his counterfeit money. Yes, and that was in the record as well, but it was a canon print from the Hewlett Packard ink. So how do you tie that in? Again, I recognize the weakness in that point. I'm not going to dispute that, but it is possible. I know that it's possible that there was another printer that was utilized. It's possible, I suppose, that you can remove the ink from one cartridge to put into another. I don't know. I don't know the answer to that. But I understand the weakness of the inference at that point. But knowing that the rest of the evidence established that he did have the printer, that he did have the parent bills, as were identified as the source for the charges, that he did have the hairspray, which the expert testimony established is utilized by counterfeiters to defeat the pen test that is used at retail establishments. But isn't hairspray used for other purposes? It can be, but the fact that there is a potential inference to be drawn elsewhere doesn't defeat the reasonableness of an inference to support the point. All right. And what about the intent to defraud? What is that? Well, Your Honor, the intent to defraud is – I believe there's two intents. Obviously, the intent to deliver, I think, is found from the existence of the multiple bills that exist. Because having multiples changes from mere possession to an intent to deliver. The intent to defraud comes from the fact of the making of the false currency. By creating currency that appears to be their legal tender is what amounts to the intent to defraud. But where is the evidence that he made it? Your Honor, again, I believe that's the inference to be drawn from everything that occurred in this case. That he had the intent to defraud. Either he made it or it was in the apartment that he had with the hairspray, with the printer. That that is a reasonable inference that can be drawn by the prior effect. And because of that, because the evidence has to be viewed in the light most favorable of the prosecution, this Court has to accept that inference. Unless it is completely against the manifest way of the evidence. The hairspray and printer? The hairspray and printer, along with everything else, including the existence of the parent bills that were found there. And I recognize that he was acquitted of the specific charges regarding the bills that were found there. I don't think there's anybody on this bench that doesn't have hairspray and printer at their home. Yes, Your Honor, but I would certainly hope that none of the members of this panel have counterfeit funds at their homes as well. And so I believe that in the light most favorable of the prosecution, the evidence does show that this defendant, who had these multiple bills in his pocket, and had additional incidents of counterfeiting in his home, shows that he had the intent to defraud by making these false documents, these false tenders. And so I just want to also just come back to the Nally Pass issue regarding why Chennaul is also distinct. Chennaul recognized that we could reinstate the charges if we were within the statute of limitations period. The reason why the defense was not, why we were not allowed to recharge the defendant in that case, in that case the defendant had been pled guilty to an aggravated unlawful use of a weapon. Years later, after the Eberhard decision, he filed a 214-01 collateral attack on his petition, saying that the statute was facially unconstitutional. It was granted. We asked, pursuant to the case law, saying that when you enter into a negotiated guilty plea, and if you vacate the plea, then you return to status quo ante. We asked to reinstate, and the trial judge said no. The appellate court affirmed that and went to the U.S. Supreme Court. What the U.S. Supreme Court said is our ability to seek to reinstate was limited by the statute of limitations in that case. We could not reinstate because more than three years had passed since the offense had occurred. That's not true in this case. In this case, the trial happened well within three years of the offense that occurred in 2012, and so there was never any statute of limitations problem. So, again, had we, and we should have, I admit, had we formally moved to reinstate, Judgment would have been obligated to reinstate those charges because 605 says they will be reinstated. And so there was no discretion on his part. There was no expectation on behalf of the defense that those charges would not be reinstated. There was no surprise expressed, and there was no prejudice associated with it the other counts or to prove that just his overall intent. And, sir? So we don't have a statute of limitations problem here, but don't we have a timing problem here? I mean, you're saying that, okay, you can reinstate at any time, right? And this was a short trial, but what if we have a very lengthy criminal trial, and then all of a sudden in the middle of the trial you say, oh, you know what? We want to bring these new charges up. What about the potential prejudice to the defendant? In that instance, certainly we couldn't try and reinstate charges in the midst of a trial after jeopardy is attached. Just we couldn't do that. That would be certainly prejudicial to the defendant. But as your example shows, that's not the facts of this case at all. This defendant knew before trial began that these charges had been reinstated, although not formally, but he knew that he was facing those additional charges. At the time it was mentioned to the jury in the opening statement, right? Not in the opening statement, at the beginning of the ordeal. At the prospective jurors, when each of the – before jeopardy was attached at all, each of the prospective jurors was told not just all the seven charges, but who the witnesses were going to be, what the basis was, who the attorneys were. It happens in every single case. Even before the 431B admonishments, the defendant is challenging it also. So at the very beginning, long before anything happened in this case, this defendant knew, these defense attorneys knew, the judge knew, the prosecutors knew, and the prospective jurors knew that the defendant was facing seven counts of forgery. And so that's why in your example, Your Honor, it's not comparable in any way. It shows why while your example is highly prejudicial, there's no prejudice in this case at all. So you're saying as long as it's done at the outset of the trial, there's no problem? Your Honor, as long as the defendant is not – suffer any surprise or is deprived of his ability to defend against the charges, then it doesn't amount to plain error. And that, I think, is the key, is that we can't ignore the plain error analysis that controls in this case because we can't just simply say the state should have done this, and because it failed to do so, the defendant is entitled to relief. Because Hughes specifically says that's not the mechanism. And so for those reasons, and for the reasons stated in our brief, we would ask this Court to affirm the defendant's conviction. Thank you. Are you asking us to remand this as well? No, Your Honor. There would be no basis for remand. We would happily just accept an affirmance. Thank you, Your Honor. Thank you. As for the knowledge issue, knowledge counts, we talked about surprise. Well, I was certainly surprised to hear the state say that it should have reinstated the charges. That's different from what they argued in their brief to this Court. So in the brief to this Court, the state said that the charges were automatically reinstated upon vacating the plea. They've apparently abandoned the sentence. So you're surprised in a good way. Surprised in a good way, yes. But with respect to the prejudice argument, we maintain that that's absolutely wrong, that you don't need to specifically show prejudice with respect to this issue. In part, what would be a point of annulling if it could be, you know, juried by the fact that it might not have mattered any way the evidence would have come in? The point of annulling is... Well, the argument is as long as you're aware of it at the outset. Okay. That would sort of defeat the point of annulling. I mean, we've held that annulling terminates the charges. It must act as if those charges are dismissed going forward. And so that would defeat the point of annulling. It would also be contrary to Stafford itself. One point we didn't get into when talking about Stafford is that at the close of trial in that case, the trial court said, you know what? I'm not going to instruct the jury on those attempted murder counts, those counts that had been annulled. And then the state argued, well, there's no prejudice. It wasn't instructed on those. And the appellate court rejected that argument and said that the defendant was unfairly forced to defend himself against charges that he should not have been. And that's precisely what we have here. We had six counts that Mr. Johnson should not have been forced to defend himself against because they were legally out of existence. The sort of fundamental principles of due process protect against that. Well, what about the issue that there was no objection raised, therefore there was an understanding, although not in the record, that there was an understanding that the charges were being brought? I think that would be an unreasonable inference. And, again, it wouldn't give effect to the knowledge. You can't, you know, have an understanding to bring back charges that have been nullied. Hughes and Chenal made clear that there are mechanisms by which to bring back charges that were nullied. You can't do that by some sort of implicit understanding. That would be contrary to Supreme Court. It doesn't erase the error, for sure. Right, it doesn't erase the error. It's part of the Stafford analysis. Well, that just, again, brings us back into plain error territory where we have to look, was there error, and then was it plain error under either of the two prongs? So, to the extent, you know, the record doesn't make clear any sort of understanding, and that would defeat the point of the nullity. And the final point I would make has to do with the closely balanced and reasonable doubt argument with respect to the intent to defraud and intent to issue. In talking about that, my opposing counsel's very first points were the fact that he had $1,100 in cash, in counterfeit cash. So, indeed, this is an argument that they're still making, that the amount of cash combined from those five counts is something that supported the elements of intent to issue and intent to defraud. And similarly, by analogizing to the possession of a controlled substance with intent to defraud, you know, they say that the more that you have, the more likely it is that you're showing an intent to deliver those drugs. Again, they're making the same argument here that, you know, points out the prejudice. To the extent that we need to show prejudice at all on this count, the amount of money at issue combined in these counts did indeed prejudice Mr. Johnson. So, if this Court has no further questions, we'd ask that you grant the relief requested in our briefs. Thank you very much. Thank you. Okay. Ms. Cole wants to thank counsels for a very well-argued matter. You've given us a lot to consider, and we will take this matter under advisement. I believe we have some guests from Royal County. So, if you would like to remain after everybody else departs, but as of right now, we are adjourned.